**NOT FOR PUBLICATION**

```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

LARON CARLTON MERRILL, JR.,    :
                               :
        Plaintiff,             : Civil Action No. 05-4931 (SRC)
                               :
        v.                     :         **O P I N I O N**
                               :
JOE VICARI, et al.,            :
                               :
        Defendants.            :
_____:

**APPEARANCES:**

    LARON CARLTON MERRILL, JR., Plaintiff, <u>pro se</u>
    # W1324
    Ocean County Correctional Facility
    120 Hooper Avenue
    Toms River, New Jersey  08754-7606

**CHESLER**, District Judge

    Plaintiff, Laron Carlton Merrill, Jr. ("Merrill"), a state inmate currently confined at the Ocean County Correctional Facility in Toms River, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915.  Based on plaintiff's affidavit of indigence, the Court grants the application to proceed <u>in forma pauperis</u> and directs the Clerk of the Court to file the Complaints without pre-payment of the filing fee.

    Having reviewed the Complaint to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review. In his Complaint, Merrill asserts a denial of medical care claim and a conditions of confinement claim.  The named defendants are: Joe Vicari, Director of the Ocean County Board of Freeholders; the Ocean County Board of Freeholders; Ocean County Correctional Department; Warden Hutler; Mary Alicea, Medical Administrator at the Ocean County Correctional Facility ("OCCF"); Dr. Henry Yu, OCCF Medical Department; and Dr. Santangilo, OCCF Medical Department.

Merrill alleges that, on June 2, 2005, he was housed in East-D 5 cell at OCCF.  He was not given a bunk and was forced to sleep on the floor.  While sleeping on the floor, plaintiff contracted a staph infection in his left leg, which led to blood poisoning and a life threatening medical condition.  On June 4, 2005, Merrill complained to the OCCF medical department.  Dr. Yu told plaintiff not to worry, that he just had a spider bite.  On June 5, 2005, Merrill complained again and was told the same thing.  By June 6, 2005, plaintiff could not walk and he was admitted to the OCCF medical department for care and treatment. Dr. Santangilo cleared plaintiff for his return to the general population in jail on July 5, 2005, but plaintiff did not return

until September 17, 2005.  He claims that his infection has resurfaced.

Merrill seeks compensatory damages in an unspecified amount from defendants for his pain and suffering caused by the defendant's medical negligence and the OCCF's unsanitary living standards.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

---

[1]  Merrill should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It does not appear that Merrill has filed any lawsuits which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, at this time.

3

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must assume the truth of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division, 411 F.3d 427, 431 (3d Cir. 2005). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the

4

complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. Grayson, 293 F.3d at 106.

### III.  SECTION 1983 LIABILITY

Merrill brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the conditions of confinement claim asserted against the Ocean County Correctional Department is subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability. See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976). Accordingly, the Complaint will be dismissed in its entirety as against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## IV.   ANALYSIS

The Court liberally construes the allegations in the complaint as: (1) a § 1983 denial of medical care claim, in violation of the Fourteenth Amendment; (2) a common law tort claim alleging medical negligence by defendants, Dr. Henry Yu and Dr. Santangilo, in failing to provide adequate medical care to

plaintiff; and (3) a conditions of confinement claim in violation of the Fourteenth Amendment.

A.  Conditions of Confinement Claim

Construing the allegations of the Complaint most liberally for the pro se plaintiff, as the Court is required to do on a sua sponte screening, it appears that the Complaint alleges a conditions of confinement claim with respect to plaintiff's exposure to a MSRA staph infections[2] at the OCCF.  It appears that plaintiff is a pretrial detainee, or at least was when he initiated this action.  Therefore, his claim should be examined under the Due Process Clause of the Fourteenth Amendment.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of

---

[2] "MSRA", or methicillin-resistant Staphylococcus aureus, are staph bacteria that have become resistant to most types of antibiotic treatment.  Inmate populations throughout the United States have increasingly been affected by community-onset MSRA infections, that in some cases have resulted in outbreaks that have been costly and difficult to control with potentially serious public health consequences.  MSRA outbreaks in prison settings have been linked to poor inmate hygiene and sharing contaminated personal items.  MSRA may be transmitted from person to person by contaminated hands and personal items.

whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979).  <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

  Here, Merrill asserts that the overcrowded conditions at the OCCF, which forced him to sleep on the floor in an unsanitary cell, has exposed him to a serious staph infection.  Taking plaintiff's allegations as true, it would appear that there is no reasonable justification or otherwise stated purpose for the defendants failure to follow simple routine preventative procedures to protect OCCF inmates, including plaintiff, from serious harm, including exposure to serious staph infections.  Such disregard for the health and public safety of the inmates at an overcrowded jail facility may imply that the non-action is intended as punishment, or at the least, a grossly inadequate response to a genuine public health concern that serves no

9

legitimate governmental purpose. See Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993). Therefore, the Court will allow this claim to proceed at this time as against defendants, Joe Vicari, the Ocean County Board of Freeholders, and Warden Hutler.[3]

---

[3] Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452

>   (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law."  [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
>   There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to this claim against supervisory defendants, Joe Vicari and Warden Hutler, and municipal defendant, Ocean County Board of Freeholders, a liberal construction of the Complaint permits an inference on the part of these defendants to ignore, tolerate, or acquiesce in the alleged unconstitutional conditions at OCCF that caused plaintiff's exposure to a staph infection.  As this claim is likely to be fact intensive, the Court will permit said claim to proceed against these defendants.

B.   <u>The Medical Claims</u>

As noted above, it would appear that Merrill was a pretrial detainee when he was allegedly denied medical care.  Thus, his constitutional claims are considered under the due process clause of the Fourteenth Amendments, rather than the Eighth Amendment. <u>See</u> <u>City of Revere v. Massachusetts General Hospital</u>, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); <u>Hubbard v. Taylor</u>, 399 F.3d 150, 158 (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 n.9 (3d Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 821 (2000); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 n.31 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988). However, the Third Circuit has held that the "deliberate indifference" standard employed in Eighth Amendment cases also applies to pretrial detainees under the Fourteenth Amendment. <u>See</u> <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 581-82 (3d Cir. 2003)("In previous cases, we have found no reason to apply a different standard than that set forth in <u>Estelle</u> ... We therefore evaluate Natale's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims under the Eighth Amendment."); <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1067 (3d Cir. 1991), <u>cert</u>. <u>denied</u>,

503 U.S. 985 (1992); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); Taylor v. Plousis, 101 F. Supp.2d 255, 262 n.3 (D.N.J. 2000). See also Hubbard, 399 F.3d at 166 n.22. Accordingly, since the Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment, the Court will apply the deliberate indifference standard of the Eighth Amendment in analyzing plaintiff's denial of medical care claim. See Simmons, 947 F.2d at 1067 (the rights of a detainee are at least as great as those of a convicted prisoner).

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale, 318 F.3d at 582.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9

(1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly,

"mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician

15

capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Merrill alleges that he contracted a serious staph infection (MSRA), but did not receive immediate or appropriate treatment, causing his medical condition to become severe and to recur.  The Court finds that Merrill has sufficiently alleged a serious medical condition, but must determine whether he has alleged facts sufficient to support a claim of deliberate indifference by the defendants doctors to plaintiff's staph infection.

Merrill admits that he received medical attention on the days he sought it.  The doctors initially diagnosed his condition as a spider bite and returned plaintiff to his cell.  It is apparent that the initial diagnosis was wrong, but the facts as alleged in the Complaint confirm that plaintiff was admitted to the medical ward for treatment of the staph infection only three days after the onset of symptoms.  Thus, it would appear that Merrill received prompt and appropriate medical attention shortly after the onset of symptoms.  Merrill merely takes issue with the initial mis-diagnosis and disagreed with the care he received (or did not receive) on June 4, 2005 and June 5, 2005.

As stated above, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate

16

indifference.  <u>Andrews</u>, 95 F. Supp.2d at 228; <u>Peterson</u>, 551 F. Supp. at 145.  Moreover, Merrill's disagreement with the defendant doctors' medical judgment does not state an Eighth Amendment claim.  <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990).  At most, the defendant doctors are alleged to have been mistaken in their initial diagnosis and treatment of plaintiff's condition, which is simply a claim of medical malpractice or negligence and not an Eighth Amendment violation.  <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.  The facts show that Merrill received prompt medical attention upon his complaints only days after the onset of symptoms indicating a serious staph infection.  Thus, plaintiff's § 1983 denial of medical care claim as against Drs. Yu and Santangilo, and Medical Administrator Alicea, will be dismissed for failure to state a claim.[4]  This dismissal is without prejudice to plaintiff bringing a medical negligence claim against these doctors in the state forum.

---

[4] Merrill alleges facts that, if true, might support a common law claim of medical negligence as against these medical defendants.  However, this is a state law claim that the Court will not address because the § 1983 claim under which federal jurisdiction is predicated, pursuant to 28 U.S.C. § 1331, will be dismissed.  There is no diversity jurisdiction between the plaintiff and defendants under 28 U.S.C. § 1332(a).  Accordingly, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c).  The Court makes no findings as to whether or not a state law claim would be appropriate or successful.

17

**V.   CONCLUSION**

For the reasons stated above, the Court will dismiss plaintiff's § 1983 denial of medical care claim, as against the medical defendants, Mary Alicea, Fr. Henry Yu, and Dr. Santangilo, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The Court declines to exercise supplemental jurisdiction over plaintiff's common law medical negligence claim against these same defendants, pursuant to 28 U.S.C. § 1367©.  However, plaintiff's conditions of confinement claim will be allowed to proceed as against defendants, Joe Vicari, the Ocean County Board of Freeholders, and Warden Hutler.  The Complaint will be dismissed in its entirety as against the Ocean County Correctional Department pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate Order follows.



```
            _____  __s/_____
                          STANLEY R. CHESLER
                          United States District Judge
```

DATED:    March 21, 2006